THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HECTOR VIRELLA *et al.*, Defendants-Appellants.

First District (2nd Division) Nos. 1—91—1527, 1—91—1528 cons.

Opinion filed November 9, 1993.—Rehearing denied December 2, 1993.

Lynda J. Khan & Associates, of Chicago (Lynda J. Khan, of counsel), and O'Keefe, Lewis & Bruno, P.C., of Skokie (John Lewis, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Christine Cook, and Michael Bonaguro, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

In a simultaneous bench trial, defendant, Hector Virella, and codefendant, Roberto Virella, were convicted of first degree murder for the drive-by shooting death of Antonio Pacheco. Hector was sentenced to 22 years in custody of the Department of Corrections; Roberto, 33 years. Both appeal, presenting as issues for review whether (1) the circuit court applied the wrong standard of proof in finding them guilty, (2) they were denied their right to effective assistance of counsel, and (3) the circuit court improperly limited their crossexamination of a witness.

Four eyewitnesses, Estefan Menchaca, Miguel Ortega, Miguel Carrillo, and Gabriel Aguilar, all testified about the events leading to defendants' arrests. Menchaca, Ortega, and Carrillo were members of the Pachucas street gang. The Pachucas are "People" and are

friendly with the Latin Kings street gang; the Pachucas "have problems" with the Latin Eagles, who are "Folks."

At 12:30 a.m. on September 2, 1989, the victim left a party at his aunt's house with Ortega, Carrillo, and Rodolfo Herrera. At an alley, they saw Menchaca and Ortega's brother. Some of the men entered the alley while others remained on the corner of Kostner and Potomac to talk.

As the men emerged from the alley, they heard music coming from four cars approaching them on Kostner. The first two cars passed on the street in front of them. Someone in the third car, a white Toyota, yelled "unknown killer." The last car was a gray Cutlass Supreme. Its occupants shouted "eagles" and "pachuca king killer" and made gang signs; Hector, the driver, made a sign for "the crown going down." Roberto emerged through the window of the last car and sat on the passenger door. He pointed a gun towards the group and shot two bullets. The victim yelled "they got me" and fell to the ground. At some point, Aguilar had heard the commotion, approached the area, and witnessed the shooting.

Immediately following the shooting, Ortega, Menchaca, Aguilar, and another person got into a car and followed the last two cars to a garage site on Chicago and Kilpatrick. There they saw the same two cars and approached them. When Roberto pointed a gun in their direction, they made a U-turn to get away from him and left. Concurrently, Carrillo and the others were driving the victim to the hospital when he died en route.

On the evening of September 2, 1989, Ortega, Menchaca, and Julio Delamola accompanied police officers on a drive during which they located and identified Hector and Roberto as the offenders, and they were arrested. Ortega, Menchaca, Carrillo, and Aguilar identified defendants in a lineup and at trial as the offenders. Ortega, Carrillo, and Menchaca had seen defendants several or more times prior to the shooting.

Three Chicago police officers, John Howe, Roland Paulnitzky, and Thomas Bachelder, testified to circumstances surrounding defendants' arrests. Officer Howe stated that Menchaca and Ortega described the vehicle as a gray or silver, older Buick or Oldsmobile, with a dark-colored roof and primer spots. Howe learned through his investigation that defendants were members of the Latin Eagles gang. Officer Paulnitzky testified that defendants admitted to him that they were gang members. James Falen, an investigator employed by defense counsel's office, testified for defendants that Carrillo told him that the offenders were driving a Buick Regal with T-tops.

Hector testified that on September 1, 1989, from 6 to 10 p.m., he

helped his father repair the sewer in their home. At 10 p.m. he saw his brother, Roberto, and told him to help their father. Hector talked with friends outside his home for 15 minutes. He then went into the living room, where he fell asleep while watching television with his sister. Hector awoke the next day. He stated that he was not a member of a street gang, did not kill the victim, and was not in the vicinity of Potomac and Kostner at the time of the murder.

Roberto testified that on September 1, 1989, at 10:30 or 11 p.m. he returned home from spending time with friends. Hector told him to help their father, which he did for about two hours. He then went upstairs and briefly watched television with his sister. He did not remember seeing Hector there at that time. After watching television, Roberto helped his parents make grape juice in the kitchen. He then went upstairs and took a shower. Afterwards, around 2 a.m., he returned to the kitchen to drink some juice. His parents were still in the kitchen. He then went to bed. Roberto denied that he was in a gang, that he killed the victim, and that he was in the area of Potomac and Kostner on September 1.

Hector Virella, Sr., defendants' father; Marisol Virella, defendants' sister; and Anna Cruz DeVirella, defendants' mother; all testified and corroborated defendants' alibis.

The parties stipulated that a certain police report described the offenders' vehicle as a gray Buick Regal with red primer. Defendants could not establish the source of that description. Officer Paulnitzky would testify that Carrillo, Aguilar, and Ortega informed him the car was silver. Detective Mark Sanders testified that his supplementary report indicated the vehicle used was a gray, late-model Buick Regal, with T-tops removed and possibly red primer on the body.

On appeal, defendants contend the circuit court applied the wrong burden of proof in finding them guilty. Defendants correctly note the following comments made by the circuit court in rendering the guilty verdict:

> "The court has considered the arguments of counsel. There were multiple eyewitnesses; some not very convincing. Others presented by the State were convincing. There are discrepancies in the testimony. There are inconsistencies with the police reports. None of these discrepancies or inconsistencies, however, has failed—*the totality of the State's evidence was clear and convincing.*" (Emphasis added.)

Subsequently, defendants filed a post-trial motion for a new trial, arguing that the State failed to prove them guilty beyond a reasonable doubt. The court, in denying the motion, explained its ruling to defense counsel:

"You argued your case well. I would point out to you the last issue you raised, I found that there were inconsistencies. \*\*\* [H]owever, the totality of the State's case was *clear and convincing.* Let there be no doubt that was my finding, that it was *clear and convincing.* That was my finding and my opinion at the close of the State's case. That was my opinion not changed by the alibi that you presented. I articulated for you very clearly my evaluation of the alibi.

Having found by a totality of the evidence that there was *clear and convincing evidence* and that I believed the State's witnesses, you had the opportunity through the alibi defense to raise a reasonable doubt. You just simply failed to do that." (Emphasis added.)

■ Due process requires a defendant be proven guilty beyond a reasonable doubt before being punished for a crime. (*In re Winship* (1970), 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073; *People v. Lambert* (1984), 104 Ill. 2d 375, 380-81, 472 N.E.2d 427.) Although the circuit court is presumed to know the law and apply it properly, when the record affirmatively shows the contrary, that presumption is rebutted. (*People v. Kluxdal* (1991), 225 Ill. App. 3d 217, 223, 586 N.E.2d 701, *appeal denied* (1992), 144 Ill. 2d 639, 591 N.E.2d 27 (*Kluxdal*).) The clear and convincing standard of evidence is lesser than that of beyond a reasonable doubt.

Defendants appropriately analogize their case to *Kluxdal,* where the circuit court, in determining defendant's sanity, affirmatively recited the wrong standard of proof at least four times. (*Kluxdal,* 225 Ill. App. 3d at 223-24.) This court reversed and remanded, holding that such recitation was strong affirmative evidence the court applied the wrong burden of proof, which rebutted the presumption that the court properly applied the law. *Kluxdal,* 225 Ill. App. 3d at 223.

Similarly, here, the circuit court recited the wrong standard of proof four times. It repeatedly referred to the clear and convincing standard of proof, instead of the correct standard of beyond a reasonable doubt. This is strong affirmative evidence that the court applied the wrong standard of proof in adjudging defendants guilty, and it rebuts the presumption that the court properly applied the law.

■ The State claims that the circuit court was "merely commenting on the strength of the [State's] case, and not enunciating a standard of proof." This argument is illogical; a standard of proof sets forth the required "strength" of a plaintiff's case. The State also contends that the court only used the words "clear and convincing" to describe the credibility of the State's witnesses. A review of the court's statements reveals that this claim is meritless. Three times,

the court expressly declared that it was commenting on the totality of the State's evidence. Last, the State attempts to distinguish *Kluxdal* because many of the court's statements here were made during a ruling on a post-trial motion. This distinction is irrelevant to our disposition of the present case. In making the statements at issue, the circuit court was explaining the reasoning behind its guilty verdict. Its repeated reference to the totality of the State's evidence as clear and convincing constitutes an affirmative showing that the court misapplied the law.

We cannot apply a harmless error analysis because the finder of fact, in applying the wrong burden of proof, did not find defendants guilty beyond a reasonable doubt. (See *Sullivan v. Louisiana* (1993), 508 U.S. 275, 280, 124 L. Ed. 2d 182, 189-90, 113 S. Ct. 2078, 2082.) Accordingly, we must reverse defendants' convictions and remand this case for a new trial to be conducted under the constitutionally proper standard. (*In re Urbasek* (1967), 38 Ill. 2d 535, 543, 232 N.E.2d 716; see *In re Enis* (1988), 121 Ill. 2d 124, 134, 520 N.E.2d 362.) Given this disposition, we deem it unnecessary to address defendants' remaining points of error.

Reversed and remanded.

McCORMICK, P.J., and SCARIANO, J., concur.