2022 IL App (2d) 200242-U
No. 2-20-0242
Order filed May 2, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09-CF-2815 |
| RYAN A. SCHILLER, | ) ) ) | Honorable Brendan A. Maher, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court did not err in denying the defendant's postconviction petition following an evidentiary hearing.

¶ 2    This is the third time that defendant Ryan Schiller's case is before us.  In his first appeal, this court affirmed the defendant's conviction for first degree murder.  *People v. Schiller*, 2012 IL App (2d) 110677-U (unpub. order dated Dec. 19, 2012) (*Schiller I*).  In his second appeal, we remanded for second stage proceedings on his postconviction petition.  *People v. Schiller*, 2016 IL App (2d) 140307-U (unpub. order dated June 27, 2016) (*Schiller II*).  In this appeal, the defendant

argues that the circuit court of Winnebago County erred in denying his postconviction petition following an evidentiary hearing. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The facts of this case have already been set forth in considerable detail in both *Schiller I* and *Schiller II*. We therefore include only those facts necessary to an understanding of this appeal.

¶ 5    The defendant caused the victim's death by asphyxia by placing his knee on the victim's back while she was face-down on a bed. According to the statement the defendant gave to police, in the early morning hours of September 4, 2009, he and the victim (who was very drunk) were fighting, and he held her down on her bed in order to keep her from striking him, not intending to kill her. When she stopped struggling and he released her, she fell onto her back. He attempted mouth-to-mouth resuscitation and CPR. When he could not resuscitate her, he arranged her on the bed and pulled the sheet up. He did not think she was alive when he left.

¶ 6    The forensic pathologist who performed the autopsy, Dr. Larry Blum, testified that, based upon the bruising on the victim and other indicators, the victim suffocated because she could not breathe when a heavy weight was placed on her chest, and her mouth and nose were partially or wholly blocked. The toxicology reports showed that the victim's blood alcohol level at the time of death was .276. Dr. Blum also commented that it was a somewhat unusual method by which to intentionally cause death; in his 31 years of practice, he had not seen a similar intentional killing.

¶ 7    Various other witnesses testified regarding times when they had seen the defendant and the victim together, and the nature of their relationship. The victim's mother, Diane Reed, testified that when the two attended a concert with her a week before the victim's death, the victim appeared upset and was crying at one point. On the bus ride home, the two were squished together, sleeping.

¶ 8    A co-worker, Paula Schwarz, testified that when the two came into a bar a couple of days before the victim's death, they were not getting along.  At one point, the defendant covered the victim's mouth with his hand to keep her quiet and the victim pushed his hand away from her mouth; the defendant then said, "I'll kill you." (Schwarz did not mention this when she gave a statement to the police six days later.)  After the two left the bar, Schwarz saw the defendant push the victim on the back of the neck to get her into their car.

¶ 9    Elizabeth Kolosa, the victim's roommate, testified that the victim had said she did not want to see the defendant and was going out with other friends on the evening of September 3, 2009.  The victim and the defendant had a "rocky" relationship and fought (though "not to a great extent") but seemed to care for each other.

¶ 10    Melissa Sadler, who identified herself as one of the victim's best friends, said that she had been at the victim's apartment for most of the night on September 3, 2009.  The defendant let himself in shortly before 4 a.m. and went into the victim's bedroom.  Sadler saw him trying to wake the victim up and heard the victim make a moaning noise.  Later, when she returned to retrieve her cell phone, she saw the defendant still sitting on the side of the victim's bed, trying to wake her.  Sadler thought the victim was still alive at that point.  The defendant was not acting in a violent manner.

¶ 11    The victim was discovered dead in her bed more than 24 hours later, on the morning of September 5, 2009.  Her eyes were open and deep purple. Her face was bruised and there was dried blood near her nose.  Her right wrist was bruised and swollen.  She was lying on her back and the sheet was pulled up to her waist or chest.  Her head was on a pillow, and the TV in the room was on.  A bloody t-shirt with the victim's blood on it was found in the trash outside her apartment.  A vaginal swab taken from the victim contained human DNA matching the defendant's DNA.

¶ 12    The defendant did not testify at trial, and the defense called no witnesses. Instead, the defense argued that the evidence showed that the relationship between the defendant and the victim was good, if uneven: the defendant had a key to the victim's apartment; they had sex; and Kolosa testified that the victim would probably call the defendant after a night of drinking. Defense counsel noted that the defendant told police that the victim had started fighting with him—hitting, kicking, and biting him—and argued that he was defending himself. Thus, he argued, the trial court should find the defendant not guilty. The defense also argued that the State had not proven the mental state necessary for first degree murder and at most had shown recklessness. Accordingly, if the trial court found him guilty of anything, it should be involuntary manslaughter.

¶ 13    The trial court found the defendant guilty of first degree murder, finding that he knew that his acts created a strong probability of death or great bodily harm: "[e]ven young children are aware that placing an object such as a pillow over the face of someone can cause them to suffocate," and there was a mark on the back of the victim's neck indicating that she had been held down. The trial court rejected the defendant's assertion of self-defense. There was no evidence as to how the fight started except for the defendant's statement, which lacked credibility. The trial court stated that it was "obvious" that the defendant was lying in his statement to the police and that his "credibility varie[d] between slim and none." Further, to the extent that there were any injuries to the defendant, the trial court found that they were caused when the victim was reacting to being held down and was "fighting for her life." The trial court also noted the victim's height and weight and commented that, based on the court's observation of the defendant, he was "clearly taller and heavier than she was."

¶ 14    Of particular relevance to this appeal, the trial court then stated:

"Now it's appropriate to examine the defendant's claim of self-defense. *** The only evidence of self-defense in this case is the statement of the defendant. He said, I acted in self-defense. Not in those words but I'm paraphrasing what he said. This may not have been argued to the Court as a matter of trial strategy and I completely understand that, but obviously the issue has been posed to the Court and the Court needs to deal with it."

After analyzing the evidence presented above, the trial court then concluded:

"The Court does not find that the injuries and death of Amanda Reed were the result of factors outlined in 720 ILCS 9–2(a)(1) and (2)" (factors that would support a finding of second degree murder rather than first degree), as "neither of those facts [was] present in this case."

¶ 15 Following his conviction, the defendant moved for a new trial, arguing once again that the most he could be convicted of was involuntary manslaughter. After a hearing, the trial court denied the motion and sentenced the defendant to 28 years' imprisonment. On December 19, 2012, this court affirmed the defendant's conviction and sentence. *Schiller I*, 2012 IL App (2d) 110677-U, ¶ 2.

¶ 16 On December 23, 2013, the clerk of the circuit court of Winnebago County received and file-stamped three documents from the defendant. In one of the documents, the defendant requested that the "Charge of 1st Degree Murder" be modified to a "Charge of 2nd Degree Murder." The defendant asserted that his conviction should be reduced to second degree murder because he was acting under a sudden and intense passion resulting from serious provocation when the victim died. In the event the trial court declined his request, the defendant requested that his document be treated as a postconviction petition.

¶ 17    In a second document he filed, the defendant specifically referred to it as a postconviction petition. In that document, he did not request that his conviction for first degree murder be reduced to second degree murder.

¶ 18    In the third document, he asserted that he had requested that his attorney "put up the 2nd degree grounds" and present an argument that the defendant "was provoked into sudden intense passion by [the] person killed." He did not request that this document be construed as a postconviction petition.

¶ 19    On March 14, 2014, the trial court dismissed the defendant's postconviction petition as frivolous and patently without merit under the first stage of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1 *et seq.* (West 2012)). The trial court rejected all the arguments that the defendant had raised in the document he had described as his postconviction petition. The trial court did not address the arguments in the documents that had been filed simultaneously with the postconviction petition.

¶ 20    On appeal, this court vacated the trial court's judgment and remanded for additional proceedings. We explained that under the Act, the trial court should have considered all the arguments that the defendant had raised in documents he referred to as his postconviction petition, even though arguments were raised in multiple documents. *Schiller II*, 2016 IL App (2d) 140307-U, ¶¶ 26-29.

¶ 21    Following this court's remand, the defendant retained post-conviction counsel who filed an amended postconviction petition which raised again the defendant's claim that trial counsel was ineffective for failing to argue that the defendant's conduct constituted second degree murder based on sudden provocation. Additionally, postconviction counsel added a claim that trial

counsel was ineffective for failing to consider retaining an expert to challenge the testimony of Dr. Blum regarding the cause of the victim's death.

¶ 22    The trial court advanced the defendant's postconviction petition to the third stage of the Act for an evidentiary hearing.  At the hearing, Bradley Schreiber testified that he was one of the defendant's attorneys at trial.  The other counsel, Joseph Polito, had since died.  Schreiber recalled that he and Polito had met with Dr. Blum for several hours prior to trial.  Schreiber recalled that Dr. Blum opined that the defendant did not intentionally cause the victim's death, and Schreiber characterized Dr. Blum's assessment as "extremely helpful" to the defendant's case.  Schreiber and Polito believed that they had discredited many of the witnesses, "[a]nd really all the State had in [his] opinion was Blum."  Schreiber testified that Polito had some other expert witnesses available, but asserted that after their discussions with Dr. Blum, and "[a]s a matter of trial strategy," he and Polito "thought it was in [the defendant's] best interest to let the State put on the forensic pathologist and he was going to carry our day which we believe he did."

¶ 23    With respect to the defendant's claim that trial counsel was ineffective for failing to argue second degree murder at trial, Schreiber testified that he did not recall the issue being discussed. He further testified that, based on Blum's testimony, he believed that there would be a finding of not guilty or involuntary manslaughter.

¶ 24    The defendant testified his attorneys told him that Blum was "basically our expert because of what he said."  He denied having any discussions with his attorneys about retaining an expert on his behalf.  As to second degree murder, the defendant testified that he and his attorneys discussed that on numerous occasions and disagreed with how to proceed.  He wanted to put all the available charges on the table, but they refused to listen to him.  They insisted, "It's their trial. Let them fight it."

¶ 25    Following the evidentiary hearing, postconviction counsel filed a brief in support of the petition, but only argued one of the claims presented at the hearing—that trial counsel was ineffective for failing to consult with an expert regarding Dr. Blum's findings as to the cause of the victim's death. Counsel argued that trial counsel's failure to consult with an expert was objectively unreasonable because only a qualified expert could determine the validity of Dr. Blum's opinion, and the decision to rely on Dr. Blum was therefore not the product of proper pre-trial investigation.

¶ 26    In its response, the State argued that trial counsel's decision not to retain an expert other than Dr. Blum was a matter of trial strategy. The State further asserted that this claim should be rejected because the defendant had not presented any evidence as to what a different expert would testify to. The State also stated that trial counsel's decision not to argue second degree murder at trial was also trial strategy. The State maintained that arguing second degree murder would be inconsistent with trial counsel's strategy that the defendant was not consciously aware that his actions were practically certain to cause the victim's death, or alternatively, that the defendant's actions at most evinced recklessness.

¶ 27    In his reply brief, postconviction counsel withdrew the ineffective assistance claim for second degree murder. Postconviction counsel explained that the State's argument that the trial counsel's decision on that issue was a matter of trial strategy was meritorious. Postconviction counsel maintained, however, that trial counsel was ineffective for not consulting with another expert as trial counsel's failure led to a breakdown of the adversarial process as it prevented trial counsel from effectively cross-examining Dr. Blum.

¶ 28    After hearing arguments, the trial court denied the defendant any postconviction relief. The trial court explained that it found both Schreiber and the defendant to be credible witnesses. The

trial court found that trial counsel's decision not to retain a different expert was not objectively unreasonable and constituted trial strategy. Further, the defendant could not demonstrate any prejudice because there was nothing in the record to show that another pathologist would have given an opinion that would have been more helpful to the defendant than Dr. Blum's.

¶ 29    Following the trial court's ruling, the defendant filed a timely notice of appeal.

¶ 30                                        II. ANALYSIS

¶ 31    The defendant first argues on appeal that he wanted the trial court to consider whether he was guilty of second degree murder rather than first degree murder. He therefore contends that he was deprived of both the effective assistance of trial counsel and postconviction counsel when trial counsel failed to raise this issue at trial and postconviction counsel withdrew the issue from consideration following the evidentiary hearing on his postconviction petition. Further, he argues the trial court erred in allowing postconviction counsel to withdraw his claim where counsel did not demonstrate that the claim lacked merit.

¶ 32    The Act provides a means by which a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). To be entitled to postconviction relief, a defendant must show that he has suffered a substantial deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged. *Id.*

¶ 33    The Act provides for postconviction proceedings that may consist of as many as three stages. At the first stage, the circuit court has 90 days to review a petition and may summarily dismiss it if the court finds it is frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2012). If the petition is not dismissed within that 90-day period, the circuit court must docket it for further consideration. *Id.* § 2.1(b).

¶ 34    At the second stage of postconviction proceedings, counsel may be appointed for defendant, if defendant is indigent. *Id.* § 4. Counsel's duties, pursuant to Rule 651(c) (Ill. S. Ct. R. 651 (c) (eff. July 1, 2017)), include consultation with the defendant to ascertain his contentions of deprivation of constitutional right, examination of the record of the proceedings at the trial, and amendment of the petition, if necessary, to ensure that defendant's contentions are adequately presented. Fulfillment of the third obligation does not require counsel to advance frivolous or spurious claims on defendant's behalf. *People v. Greer*, 212 Ill.2d 192, 205 (2004). Moreover, "[p]ost-conviction counsel is only required to investigate and properly present the petitioner's claims." *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). We note that a defendant in postconviction proceedings is entitled to only a "reasonable" level of assistance, which is less than that afforded by the federal or state constitutions. *People v. Munson*, 206 Ill. 2d 104, 137 (2002).

¶ 35    After counsel has made any necessary amendments to the petition, the State may move to dismiss a petition or an amended petition pending before the court. 725 ILCS 5/122-5 (West 2012). If that motion is denied, or if no motion to dismiss is filed, the State must answer the petition, and, barring the allowance of further pleadings by the court, the proceeding then advances to the third stage, a hearing wherein the defendant may present evidence in support of the petition. *Id.* § 6.

¶ 36    Throughout the second and third stages of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation. *Pendleton*, 223 Ill. 2d at 471. At the second stage of proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true, and, in the event the circuit court dismisses the petition at that stage, we generally review the circuit court's decision using a *de novo* standard. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). When a petition is advanced to a third-stage evidentiary

hearing, where fact-finding and credibility determinations are involved, we will not reverse a circuit court's decision unless it is manifestly erroneous. *Id.* If no such determinations are necessary at third stage, *i.e.*, no new evidence is presented and the issues presented are pure questions of law, we will apply a *de novo* standard of review, unless the judge presiding over postconviction proceedings has some "special expertise or familiarity" with the trial or sentencing of the defendant and that "familiarity" has some bearing upon disposition of the postconviction petition. See *People v. Caballero*, 206 Ill. 2d 65, 87-88 (2002).

¶ 37 Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced the defendant. *Id.* To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). To show sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If a case can be disposed of on the ground of lack of sufficient prejudice, the court need not consider the quality of the attorney's performance. *Id.* at 697.

¶ 38 The defendant argues that the evidence supported a request that the trial court consider second degree murder as a lesser mitigated offense under a theory that he acted in imperfect self defense or under sudden provocation. 720 ILCS 5/9-2(a)(1)-(2), (b) (West 2008). For second degree murder based on imperfect self defense, a defendant must show by a preponderance of evidence that at the time of the killing, he believed the circumstances to justify his use of force

under section 7-1(a) of the Criminal Code of 1961 (720 ILCS 5/7-1(a) (West 2008)), but that his belief was unreasonable. *Id.* § 9-2(a)(2). For second degree murder based on serious provocation, the defendant must show by a preponderance of the evidence that, "[a]t the time of the killing he [was] acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally cause[d] the death of the individual killed." *Id.* § 9-2(a)(1), (c). "Serious provocation" is defined as "conduct sufficient to excite an intense passion in a reasonable person." *Id.* § 9-2(b). A defendant is entitled to a second degree instruction if he presents some evidence warranting such an instruction. *People v. Washington*, 2012 IL 110283, ¶ 25.

¶ 39    Here, the defendant suffered no prejudice due to his trial counsel's failure to request that the trial court consider second degree murder as an alternative to finding the defendant guilty of first degree murder. That is because the trial court specifically considered whether the defendant acted in self defense and found that neither of the grounds to reduce the defendant's conviction from first degree murder to second degree murder—imperfect self defense or provocation—were present. As such, the defendant was not deprived of the effective assistance of counsel on this issue. *Strickland*, 466 U.S. at 697. For this same reason, his postconviction counsel did not provide unreasonable assistance on this issue either. *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 37. Further, as the issue had no merit, the trial court did not err in allowing postconviction counsel to withdraw the issue following the evidentiary hearing.

¶ 40    In so ruling, we reject the defendant's insistence that the trial court misstated the record in finding that he did not act in self defense. Specifically, the defendant asserts that in referring only to his statement as evidence that he acted in self defense, the trial court overlooked that testimony from both Dr. Blum and the victim's roommate that also supported a finding that he was acting in

self defense. We do not believe that the trial court mischaracterized the evidence. As we observed in *Schiller I*, the defendant and the victim were the only witnesses to their fatal altercation. *Schiller I*, 2016 IL App (2d) 140307-U, ¶ 34. As the victim obviously could not testify, the trial court's comment that the "only evidence" that the defendant acted in self defense was the defendant's statement was a fair characterization of the record.

¶ 41 The defendant next asserts that the trial court incorrectly stated that trial counsel did not argue that the defendant acted in self defense. Although the trial court did say that, it then went on to discuss whether the defendant had acted in self defense. The defendant was not prejudiced by the trial court's comments about whether self defense had been raised as a defense.

¶ 42 Lastly, the defendant argues that the trial court's citation to the second degree murder statute by itself does not indicate that it really considered finding the defendant guilty of second degree murder as an alternative to first degree murder. The defendant contends that the trial court's comments indicate that it misapprehended the law as it did not consider the relationship between self defense and imperfect self defense. Specifically, the defendant asserts that the trial court's comments improperly indicate that he could not be found guilty of second degree murder if he was not found to have acted in self defense.

¶ 43 As the defendant acknowledges, a trial court is presumed to know the law. *People v. Virella*, 256 Ill. App. 3d 635, 638 (1993). The trial court's explicit reference to the second degree murder statute is therefore compelling evidence that it considered and rejected finding the defendant guilty of second degree murder. None of the trial court's comments support a different conclusion. In examining the evidence, the trial court found that the defendant's statement that he acted in self defense was not credible. Thus, there was no probative evidence supporting imperfect self defense. The trial court's comments also reflect that it considered and rejected serious

provocation, as it found that the victim did not start the fight and the injuries the defendant suffered were because the victim was fighting for her life. Based on these findings, it is clear that trial court did not misapprehend the law when it determined the second degree murder statute was not applicable to the defendant's case.

¶ 44 The defendant's second contention on appeal is that his postconviction counsel provided unreasonable assistance in regard to advancing the claim that trial counsel was ineffective for failing to consult or retain another expert to challenge Dr. Blum's findings. Specifically, the defendant argues that postconviction counsel was ineffective because (1) his Rule 651(c) certificate rebuts any claim he actually read the transcripts; and (2) he failed to support his argument at the evidentiary hearing with any expert testimony.

¶ 45 As set forth earlier, Rule 651(c) governs the duties of postconviction counsel. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). We recently held that Rule 651(c) does not apply once a postconviction petition has been advanced to the third stage. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 27; see also *People v. Knight*, 2020 IL App (1st) 170550, ¶ 38 (same); *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 59 (Rule 651(c) applies only to duties undertaken at the second stage). Thus, as the defendant's postconviction petition advanced to a third stage hearing, his postconviction counsel's alleged failure to comply with Rule 651(c) is not a basis to determine that postconviction counsel rendered unreasonable assistance. *Pabello*, 2019 IL App (2d) 170867, ¶ 27. Further, although the defendant urges us to depart from our decision in *Pabello*, we decline to do so.

¶ 46 We also do not believe that postconviction counsel's failure to support his argument at the evidentiary hearing with expert testimony demonstrates that he provided unreasonable assistance. At the hearing, postconviction counsel questioned trial counsel Schreiber about why the defense chose to rely only on Dr. Blum's testimony. Schreiber explained that after he and Polito conferred

with Dr. Blum, they believed that his testimony that the defendant had not intentionally killed the victim would be "extremely help[ful]" to the defendant's case. They believed that they could not get a better witness than Dr. Blum. It was therefore the defense's trial strategy to rely exclusively on Dr. Blum's expert testimony.

¶ 47 At the close of the hearing, the trial court determined trial counsel's decision not to pursue a different expert was a matter of trial strategy and did not prejudice the defendant. We agree with that assessment. As such, even if postconviction counsel had presented additional expert testimony at the evidentiary hearing, that does not change the fact that trial counsel had a legitimate reason to rely solely at trial on the State's expert, Dr. Blum. As trial counsel's representation on this matter was not ineffective, we cannot say that postconviction counsel's representation was unreasonable for failing to do more to support a meritless claim. See *Hotwagner*, 2015 IL App (5th) 130525, ¶ 37.

¶ 48 Accordingly, as the defendant's postconviction petition lacked merit, the trial court's denial of that petition was not manifestly erroneous. See *Childress*, 191 Ill. 2d at 174.

¶ 49                                III. CONCLUSION

¶ 50 For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 51 Affirmed.