2026 IL App (1st) 241524-U

No. 1-24-1524

Order filed February 11, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 234004821 |
| PIANCHE GUIDRY-WATKINS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Stanley L. Hill, |
| | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Martin and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's judgment, which found defendant guilty of misdemeanor assault, is reversed and remanded for a new trial.

¶ 2    The State charged defendant Pianche Guidry-Watkins with one count of misdemeanor assault. Following a bench trial, defendant was found guilty and sentenced to 30 days in the Cook County Department of Corrections.

¶ 3    Defendant now appeals, arguing that he is entitled to a new trial because the trial court applied an incorrect and constitutionally deficient standard of proof to the evidence.

¶ 4    For the following reasons, we reverse the judgment of the trial court and remand defendant's case for a new trial.[1]

¶ 5                                I. BACKGROUND

¶ 6    Molly Anderson testified that she took the Blue Line train on December 27, 2023, around 11 or 11:30 a.m. As she boarded the train, defendant said to her, "I want to f*** you." He was holding a 750 mL bottle in his hand, and Anderson believed he was intoxicated because he was incoherent and stumbling.

¶ 7    Anderson sat down approximately 15 feet away and was looking at her phone. Defendant stepped in front of Anderson with his waist at her eye level and placed his left hand on his pants. She thought that defendant was about to expose himself, but instead he lifted the bottle in his hand to a height just below shoulder level. Anderson testified, "I knew he was going to hit me," so she withdrew a switchblade in her sweater pocket and brandished it.

¶ 8    Defendant retreated and sat down near the conductor's door. Anderson stood up, contacted the conductor, and asked him to stop the train and call the police. The conductor refused to contact the police, so Anderson called the police herself. Then she began taking photos, including a photo of defendant and the bottle he was holding. Before the police arrived, defendant moved to another car on the train.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 9      On cross-examination, Anderson testified that she told Oak Park Police Officer Failor[2] during their first conversation that she thought defendant was about to expose his genitals and that she thought defendant was going to hit her with the bottle. Upon being confronted with Failor's body-worn camera, Anderson admitted that during her first interview with police, she did not mention being concerned that defendant was going to hit her with the bottle. She further admitted that she only mentioned feeling threatened by defendant when Failor later asked her if she felt threatened. She also admitted that defendant was only holding the bottle and he never drew the bottle back like he was preparing to swing.

¶ 10     Failor testified that he was dispatched to the Oak Park Blue Line stop along with Hernandez, and that he had interacted with and arrested defendant before. Failor testified that he spoke with Anderson, who claimed defendant said, "I want to f*** you." According to him, Anderson ignored defendant and sat down. Defendant approached her and, according to Failor, "was attempting to display his genitals." Contrary to Anderson's testimony, Failor testified that Anderson told him that defendant had a bottle in his hand and that he was "kind of cocking it back."

¶ 11     Defendant's Exhibit 1, the footage from Failor's body-worn camera, was admitted into evidence. The video, in summary, shows Failor approaching the stopped CTA train and briefly speaking with an unknown CTA employee about the incident and about Anderson's accusations. Failor engages in a short conversation with Anderson on the train before the two exit the train and continue speaking. Anderson demonstrates the way defendant was holding the bottle by holding

---

[2]The trial testimony does not contain Failor's first name, nor does it contain the first name of his partner, Officer Hernandez.

her arm with her elbow close to her side, completely bent at the elbow, with her hand approximately six inches from her shoulder.

¶ 12    Anderson claims that defendant was trying to pull out his penis, and she insists that defendant would have done so if she had not brandished her knife. Failor leaves Anderson and approaches defendant and his partner, Officer Hernandez.

¶ 13    Following their conversation, Failor steps away and contacts an unidentified supervisor on his phone. He conveys Anderson's claims up to that point and asks, "at the least, what is it, disorderly conduct?" The response cannot be heard, but Failor replies, "She didn't say he was going to hit her, but she said he cocked it back." No response can be heard. Failor then reapproaches Anderson and says, "Hey, ma'am, did you feel like he was going to hit you with the bottle?" Anderson nods her head up and down. Failor states, "Yeah," multiple times into his phone. Failor returns to Hernandez and defendant and informs defendant that he was going to be charged with assault. On the video, defendant's pants appear baggy and loose. Multiple times throughout the video defendant uses his hands to pull up his pants.

¶ 14    People's Exhibit 2, video from Hernandez's body-worn camera, was also admitted into evidence. Hernandez interviews defendant, who claims that he walked up to Anderson because he wanted to talk to her, and she pulled out a knife. He denies saying anything to her.

¶ 15    During its ruling, the trial court recited the evidence and concluded that Anderson was in reasonable apprehension of receiving a battery. It then said, "The evidence is clear and convincing," before finding defendant guilty of assault. The trial court did not mention the reasonable doubt burden of proof. The trial court stated that Anderson "had a right to be mad. She had an absolute right to be mad. She had an absolute right to say, I hope he burns in hell."

¶ 16    Defendant filed a post-trial motion which claimed, in part, that the trial court failed to hold the State to its burden of proof beyond a reasonable doubt and instead used the clear and convincing standard. Defendant also claimed that the trial court improperly disregarded Anderson's prejudice toward defendant, disregarded evidence that impeached Anderson's testimony, and that the trial court improperly admitted speculative evidence when Anderson testified that she knew defendant was going to hit her.

¶ 17    At the hearing on defendant's motion, the parties engaged in oral argument about the latter three of these four issues. The trial court did not address defendant's argument that it applied an incorrect standard of proof. The trial court then gave the following ruling on defendant's motion, which we recite in full:

> "Defendant's motion for reconsideration of finding and request for new trial is denied. Based in part on the oral response to the motion made by Assistant State's Attorney. And Court's finding the complaining witness's testimony was clear and convincing and credible, and that complaining witness had good reason to be extremely upset with defendant."

¶ 18                                II. ANALYSIS

¶ 19    Defendant's only claim on appeal is that the trial court misapplied the law by failing to hold the State to its burden of proof beyond a reasonable doubt and instead evaluated the evidence using the clear and convincing evidence standard.

¶ 20    Due process requires proof beyond a reasonable doubt before an individual can be convicted of a crime. *People v. Lambert*, 104 Ill. 2d 375, 380-81 (1984). The trial court is presumed to know the law and apply it properly. *People v. Kluxdal*, 225 Ill. App. 3d 217, 223 (1991). That

presumption is rebutted only when the record affirmatively shows the contrary. *Id*. The clear and convincing standard is lesser than that of proof beyond a reasonable doubt. *People v. Virella*, 256 Ill. App. 3d 635, 638 (1993). However, the trial court is not required to state for the record what standard of proof it has employed. *People v. Gutierrez*, 105 Ill. App. 3d 1059, 1063 (1982).

¶ 21　Whether the trial court applied the correct legal standard is a question of law reviewed *de novo*. *In re P.J.*, 2018 IL App (3d) 170539, ¶ 13.

¶ 22　Here, *Virella* is an instructive case. In *Virella*, the defendants were convicted of first degree murder following a bench trial. *Virella*, 256 Ill. App. 3d at 635. In explaining its ruling, the trial court stated, "the totality of the State's evidence was clear and convincing." *Id*. at 637. The defendants filed a motion for a new trial, arguing that the State failed to prove them guilty beyond a reasonable doubt. *Id*. At the hearing on that motion, the trial court repeated three times that it believed the State's evidence was clear and convincing. *Id*. at 638.

¶ 23　This court considered the trial court's repeated reference to the clear and convincing standard as strong affirmative evidence that the trial court applied the wrong standard of proof. *Id*. The State argued that the trial court was "merely commenting on the strength of the State's case, and not enunciating a standard of proof." *Id*. However, we observed that, "[t]his argument [was] illogical; a standard of proof sets forth the required strength of a plaintiff's case." *Id*. Ultimately, this court determined that the trial court's repeated references to the totality of the State's evidence as clear and convincing were an affirmative showing that the trial court misapplied the law. *Id*. at 639.

¶ 24　*Kluxdal* is also instructive. There, the defendant was charged with the first degree murder of his wife and mother-in-law, and he raised the defense of insanity. *Kluxdal*, 225 Ill. App. 3d at

218-19. When discussing the evidence, the trial court repeatedly referenced defendant's insanity defense as not providing clear and convincing evidence, even though the proper burden of proof for establishing insanity was a preponderance of the evidence. *Id*. at 223. This court deemed the trial court's repeated use of the incorrect burden of proof sufficient to overcome the presumption that the trial court properly applied the law. *Id*. at 224.

¶ 25    Defendant argues that these cases are analogous to his case, and we agree. The trial court is presumed to know the law and apply it correctly. *Kluxdal*, 225 Ill. App. 3d at 223. But here, the trial court's statements sufficiently rebut that presumption so as to force us to question the manner in which the trial court evaluated the evidence. Like in *Virella*, the trial court commented on the strength of the evidence as being "clear and convincing." *Virella*, 256 Ill. App. 3d at 637.

¶ 26    When defendant claimed in his post-trial motion that the trial court had failed to apply the correct legal standard, the trial court did not address or even acknowledge this portion of defendant's motion. As summarized above, the trial court's ruling on the motion was brief and stated that Anderson's testimony was "clear and convincing and credible" in response to argument from the parties about whether Anderson was impeached, whether she gave speculative testimony, and whether she had any prejudice against defendant that the trial court disregarded.

¶ 27    Undoubtedly, the trial court is not required to state for the record what standard it used to evaluate defendant's guilt. *Gutierrez*, 105 Ill. App. 3d at 1063. Here, however, the trial court's ruling contained explicit reference to the clear and convincing evidence standard when it said, "The evidence is clear and convincing." When it announced that defendant was guilty, it only said, "The complaining witness had a reasonable apprehension of receiving a battery. That was established by the prosecution's case. And as a result of that there will be a finding of guilty."

¶ 28    As noted earlier, defendant's post-trial motion raised his concern that the trial court's description of the evidence as "clear and convincing," meant that the trial court had not evaluated the evidence under the constitutionally required proof beyond a reasonable doubt standard. Significantly, despite being apprised in writing of its potential mistake, the trial court did not address or acknowledge this claim. And in response to the other arguments of the parties, the trial court referred to Anderson's testimony as "clear and convincing and credible."

¶ 29    Repeated references to an improper standard, and the absence of the articulation of the proper standard, cannot be ignored. "Clear and convincing" was the only standard referenced by the trial court. Even when defendant brought the error to the trial court's attention, and the trial court had every opportunity to explain itself or offer clarification that would reassure us of the validity of defendant's conviction, it did not do so.

¶ 30    The State first argues in response that the trial court's remarks during its ruling that "the evidence is clear and convincing," were a reference to the strength of the evidence and not a statement on the burden of proof it used. This is the same argument the State used in *Virella* that this court deemed illogical. *Virella*, 256 Ill. App. 3d at 638. The burden of proof required dictates how strong the evidence must be. *Id*. The State does not appear to apprehend the consequences of its argument if taken to its logical conclusion. If the trial court applied the correct standard of proof, then an observation that the strength of the evidence was clear and convincing should have resulted in a finding of not guilty. It is logically impossible that the trial court applied the correct standard of proof, found the strength of the evidence to be clear and convincing, and still found defendant guilty based on proof beyond a reasonable doubt.

¶ 31    Furthermore, the State also insists that the trial court's statement that Anderson was "clear and convincing and credible" was merely its "impression of the witness's credibility." Perhaps. But there are two problems with that argument. The first is that Anderson's testimony was the entire case against defendant. She was the only person to witness the alleged assault who testified. Her testimony was the only thing that could convict defendant of assault. Assessing her credibility as "clear and convincing" was a meaningless thing to say if the trial court was using the correct standard. The second is that words matter, and in an instance such as this, words are the only thing we can use to evaluate whether the law was applied correctly. Twice the trial court used the phrase "clear and convincing," when describing the evidence and Anderson's credibility. It did not ever describe the evidence as proof beyond a reasonable doubt, even after defendant brought the issue to the trial court's attention. The law instructs us to afford the trial court a presumption that it applied the law correctly unless the record affirmatively shows the opposite. *Kluxdal*, 225 Ill. App. 3d at 223. It does not require us to continue to extend such a presumption *despite* the record showing the opposite.

¶ 32    The State further argues that defendant's case is distinguishable from two such cases where reversal was warranted because the trial court explicitly applied an improper burden of proof. See *In re Urbasek*, 38 Ill. 2d 535 (1967) and *In re D.T.*, 212 Ill. 2d 347 (2004). *In re Urbasek* involved a juvenile delinquency finding in which the trial court concluded the State met its burden of proof, which it stated was preponderance of the evidence. *In re Urbasek*, 38 Ill. 2d at 540-42.

¶ 33    Our supreme court ultimately reversed the delinquency finding on the basis that due process required proof beyond a reasonable doubt for juvenile delinquency findings. *Id*. at 540-42. However, this was not a case where the trial court misapplied the burden of proof. The prevailing

standard at the time for juvenile delinquency proceedings *was* preponderance of the evidence. *Id.* at 538. Instead, this was a case where the supreme court addressed the question of what the proper burden of proof *should* be, and ultimately concluded that proof beyond a reasonable doubt, and not preponderance of the evidence, was the correct standard. *Id.* at 538-40.

¶ 34   Similarly, in *In re D.T.*, the trial court terminated a mother's parental rights after a hearing based on the trial court's "sound discretion." *In re D.T.*, 212 Ill. 2d at 349. After determining that the discretion of the trial court was not a standard of proof, the supreme court weighed whether preponderance of the evidence or clear and convincing evidence should apply to the proceedings. *Id.* at 358-66. Ultimately, the supreme court determined that the appropriate standard for termination of parental rights proceedings should be preponderance of the evidence and remanded the case for a new hearing. *Id.* at 366-67.

¶ 35   The State argues, "In both cases, the judges' repeated and unequivocal statements demonstrated that they measured the evidence by the wrong rule of decisions." However, the State has misapprehended or disregarded the reasons why *In re Urbasek* and *In re D.T.* are so dissimilar to this case and why the standard of proof in those cases was incorrect. In both cases, the trial court overtly relied on a standard of proof that ultimately required reversal because the supreme court changed the law about what the standard of proof *should be* going forward. There is no such uncertainty about the standard of proof that should control defendant's case here. Accordingly, we do not find these cases to be a persuasive illustration of what is required for reversal.

¶ 36   Next, the State also argues that, instead of reversing, we may remand this case to give the trial court an opportunity to clarify. However, neither of the cases cited by the State stand for the proposition that we may remand a case to allow the trial court to clarify what standard of proof it

used. See *People v. Page*, 2024 IL App (1st) 220830, and *People v. Hill*, 2021 IL App (1st) 131973-B. In *Page*, we revested the trial court with limited jurisdiction to conduct a hearing on a motion to quash arrest and suppress evidence when the failure to file such a motion was the basis of the defendant's ineffective assistance of counsel claim. *Page*, 2024 IL App (1st) 220830, ¶¶ 18-20, 44-45. This court maintained jurisdiction over defendant's other claims on appeal. *Id*. ¶ 45. *Hill* is even less persuasive. In *Hill*, the defendant filed a motion to dismiss his indictment, and at a hearing on the motion, the trial court granted the State's motion for directed finding. *Hill*, 2021 IL App (1st) 131973-B, ¶ 4. Defendant appealed and we reversed based on new case law, instructing the trial court to complete defendant's hearing. *Id*. ¶¶ 5-7. Following the completed hearing, the trial court dismissed defendant's indictment and the State did not appeal. *Id*. ¶¶ 9, 11. The State then filed a supplemental brief under the case number pertaining to defendant's first appeal. *Id*. ¶ 11. We determined that we did not have jurisdiction to consider the State's claims that were filed under the defendant's prior appeal and we dismissed the appeal. *Id*. ¶ 32.

¶ 37     Moreover, the trial court already had an opportunity to clarify what standard it used when defendant filed a post-trial motion claiming that the trial court applied an incorrect standard of proof. The trial court ignored that claim entirely and did not confirm that it found defendant guilty beyond a reasonable doubt.

¶ 38     The State further claims that the record reflects that the trial court knew and correctly applied the law because both the trial court and counsel in defendant's other misdemeanor trials stated the correct burden of proof. The record contains defendant's misdemeanor trials for criminal trespass to property and disorderly conduct, which are unrelated to the instant case and are not part of this appeal.

¶ 39    In defendant's trial for criminal trespass to property, the trial court specifically stated that it found defendant guilty beyond a reasonable doubt. At defendant's trial for disorderly conduct, the trial court found defendant guilty of one count, but as to another count related to another complaining witness, the trial court stated that the evidence did not meet proof beyond a reasonable doubt. At various points in these other cases, counsel for the parties recited the correct standard of proof. Based on these prior references, the State argues, "the trial court's phrasing here reflected only an evaluation of witness credibility within the beyond-a-reasonable-doubt framework that they [*sic*] had already articulated in defendant's prior trials with the same judge."

¶ 40    We fail to see the causal relationship between attorneys reciting the correct burden of proof in entirely different cases that were decided at different times and whether the trial court applied the law correctly in the instant case. Additionally, if the parties reciting the burden of proof in other cases has any significance, it must also be significant that neither of the parties mentioned the burden of proof here. Both sides waived opening statements, and neither party mentioned the proof beyond a reasonable doubt standard in closing arguments or during the arguments on defendant's post-trial motion. Furthermore, it would be illogical to conclude that once the trial court has applied the law correctly in one case, we can forever assume that the trial court continues to do so going forward even in the face of statements that suggest otherwise.

¶ 41    The tenor of the State's arguments, we think, can be fairly summarized as asking us to give the trial court the benefit of the doubt; that it did not mean what it said. The problem, of course, is that we already give the trial court the benefit of the doubt by affording it a presumption that it knows the law and applied it correctly. The proof beyond a reasonable doubt standard is an "axiomatic and elementary constitutional principle." *Francis v. Franklin*, 471 U.S. 307, 313

(1985). It is "bedrock" for our system of criminal justice, and a "fundamental value determination of our society" that "it is far worse to convict an innocent man than to let a guilty man go free." *Id*. Above all else, this sacrosanct standard must be the thing we do right. The trial court's comments, particularly in light of defendant's posttrial motion that precipitated no clarification from the trial court, deprive us of the confidence that it correctly applied the law.

¶ 42 The State finally urges us to consider this as an issue of the sufficiency of the evidence and affirm because the evidence was overwhelming. Even if we agreed that the evidence was overwhelming, this is not an issue that can be resolved with a harmless error analysis because the trial court, in applying the wrong burden of proof, did not find defendant guilty beyond a reasonable doubt. *Virella*, 256 Ill. App. 3d at 639. Accordingly, we must reverse defendant's conviction and remand for a new trial.

¶ 43                                    III. CONCLUSION

¶ 44 For the foregoing reasons, we reverse the judgment of the trial court and remand for a new trial.

¶ 45 Reversed and remanded.