2024 IL App (1st) 220830
No. 1-22-0830
Opinion filed February 9, 2024

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 21-CR-09521-01 |
| DARYL PAGE, | ) | The Honorable Tyria Walton, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Johnson and Justice C.A. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Daryl Page argues ineffective assistance of trial counsel for failing to move to suppress his arrest prompted by observations on police surveillance cameras. At trial, the evidence consisted of one police officer's testimony and four exhibits introduced by the State (two video clips and two still photographs extracted from the videos). When ruling, the trial judge remarked that she did not know what she saw in one of the photographs entered into evidence, but in the video, she thought Page made a "racking motion" as he sat on the porch.

¶ 2    The scant evidence did not establish probable cause to search the car and arrest Page. We could affirm Page's conviction and relegate his future to a possible postconviction petition. But,

our collective experience informs us that by the time the judicial system reached a conclusion, Page would likely have served his term of imprisonment. Courts should avoid this from occurring whenever possible.

¶ 3        Slow justice usually means limited justice, and the criminal justice system moves slowly, for a host of reasons. To the extent procedures, rules, and case law are available, courts have a duty to the parties and the people of Illinois to minimize delay in reaching a case's final disposition, which also conserves judicial and other resources while advancing the interests of justice. In the words of United States Supreme Court Justice Felix Frankfurter, "To be effective, judicial administration must not be leaden-footed." *Cobbledick v. United States*, 309 U.S. 323, 325 (1940). In criminal cases, Frankfurter's warning takes on a more urgent tone.

¶ 4        We reverse and remand so Page has an opportunity to litigate a motion to suppress. We retain jurisdiction to decide any remaining issues after the hearing.

¶ 5                                    Background

¶ 6        Daryl Page was charged with being an armed habitual criminal (725 ILCS 5/24-1.7 (West 2020)) based on two felony convictions in 2018. One police officer testified at trial. Defense counsel presented no evidence.

¶ 7        In June 2021, shortly after 8 p.m., Chicago police officer Jonathan Carroll, while monitoring multiple remote police observation device (POD) cameras, was "paying close attention" to a POD camera focused on an intersection on the south side of Chicago, four miles away. Carroll observed a person placing an object in his jacket pocket. Carroll testified he believed the object was a firearm magazine, though the object appeared for a split second. He and two other officers drove in an unmarked squad car to investigate further. All three officers wore body cameras.

¶ 8 When Carroll arrived, he recognized the person (Page) by his face and clothing, a red hat, and a jean jacket. Page stood on the sidewalk, 10 to 15 feet from a white Kia and a blue Pontiac parked on the street. Carroll testified:

"Q. What did the defendant do when you arrived with your partners?

A. He threw something into the white Kia, and then he fled away from us westbound on foot.

Q. Did you pursue the defendant at that particular moment, or did you do something else?

A. I recovered a firearm from the—from the Pontiac. I handed it off to another officer that was on scene and then I pursued the offender on foot."

Carroll caught Page, ultimately arresting him.

¶ 9 Carroll stated the firearm he "recovered" from the Pontiac was on the front passenger seat, visibly "protruding" from under a jacket.

¶ 10 Four exhibits were admitted into evidence: (i) a 90-minute POD video (People's exhibit No. 1), (ii) a still photograph from the POD video of Page sitting on a porch with (according to Carroll's testimony) "a magazine that appears to be on his person protruding out of his jacket" (People's exhibit No. 2); (iii) a one-minute video recorded by Carroll's bodycam (People's exhibit No. 3); and (iv) a still photograph from bodycam video showing the front seat of the Pontiac (People's exhibit No. 4).

¶ 11 On cross-examination, Carroll described the object in the picture of Page sitting on the porch (exhibit No. 2) as a "black magazine." A porch post partially obstructed the object in the photograph. Carroll stated that when he opened the Pontiac door, he found a gun protruding about

an inch from under a jacket. In the bodycam still photograph (exhibit No. 4), the jacket had been moved to expose the gun. Carroll did not know what Page threw into the white Kia; no keys to the Pontiac were recovered. And Carroll never saw Page driving the Pontiac.

¶ 12        The parties stipulated to Page's two drug offenses: In 2018, Page was arrested and charged with two counts of delivery of a controlled substance on the same day, pleaded guilty to both offenses on July 24, 2018, and received concurrent terms of two years' probation. Page has no other felony convictions.

¶ 13        The defense rested without presenting any witnesses or evidence.

¶ 14        Before ruling, the trial judge requested a replay of two portions of the POD and bodycam videos.

¶ 15        The trial court found Page guilty of armed habitual criminal (725 ILCS 5/24-1.7 (West 2020)). In ruling, the trial court stated,

> "From that same video, Mr. Page is seen walking onto that porch and taking a seat. The officer who testified in this case through direct examination circled something in the photo that he describes as the handle or magazine portion of the firearm. In the photo, I can't tell what it is. I don't know what it is. It could possibly be the keys in his hands, but what the court did observe in that video is that while Mr. Page was sitting on the porch, his hands move in a manner in which one's hands would move when you're racking a firearm."

¶ 16        The trial court sentenced Page to the statutory minimum of six years' imprisonment.

¶ 17                                    Analysis

¶ 18                          Ineffective Assistance of Counsel

¶ 19    To establish an ineffective assistance of counsel claim, a petitioner must show (i) counsel's performance fell below an objective standard of reasonableness and (ii) a reasonable probability exists that but for counsel's deficient performance, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Trial counsel performs deficiently when "actions or inactions constituted error(s) so serious as to fall below an objective standard of reasonableness under prevailing professional norms." (Internal quotation marks omitted.) *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 76. To prove counsel deficient, the defendant must overcome a "strong presumption" that counsel's conduct resulted from sound trial strategy, not incompetence. *People v. Pecoraro*, 175 Ill. 2d 294, 319-20 (1997); *People v. Clendenin*, 238 Ill. 2d 302, 317 (2010).

¶ 20    Regarding the second prong, a petitioner must show more than a mere possibility of a different result. *People v. Evans*, 209 Ill. 2d 194, 220 (2004). "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *Id.*

¶ 21    Trial counsel's decision regarding whether to file a motion to suppress generally involves a matter of trial strategy and is entitled to great deference. *People v. Gayden*, 2020 IL 123505, ¶ 28; *People v. Bew*, 228 Ill. 2d 122, 128 (2008). To overcome the trial strategy presumption, the defendant must show a "reasonable probability" that the motion would have succeeded and the outcome of trial would have been different. *People v. Henderson*, 2013 IL 114040, ¶¶ 11, 15.

¶ 22    Furthermore, counsel's failure to file a motion to suppress does not demonstrate incompetent representation when it turns out the motion would have been futile. *People v. Givens*, 237 Ill. 2d 311, 331, 343 (2010). See *People v. Patterson*, 217 Ill. 2d 407, 438 (2005) (first

determination in ineffective assistance of counsel claim for failure to file motion to suppress is whether motion would have been granted). If easier, a court may proceed directly to the second prong of *Strickland* and dismiss an ineffective assistance claim because it lacks sufficient prejudice without first determining deficient performance. *Strickland*, 466 U.S. at 697. See *People v. Eubanks*, 2021 IL 126271, ¶ 30 ("To prove prejudice relative to the failure to seek the suppression of evidence, a defendant must show that the unargued suppression motion was meritorious and that there is a reasonable probability that the verdict would have been different without the excludable evidence." (Internal quotation marks omitted.)).

¶ 23    This court is left to determine whether a motion to suppress in Page's case had a reasonable probability of success and whether it would have changed the outcome at trial.

¶ 24                              Probable Cause

¶ 25    An officer has probable cause if they can show, under a totality of the circumstances, that the objective facts known to them at the time of the arrest would lead a reasonable person to believe that the car contained evidence of criminal activity. *People v. Hill*, 2020 IL 124595, ¶ 23; *People v. Sims*, 192 Ill. 2d 592, 614 (2000). Probable cause does not require proof beyond a reasonable doubt, but the officer must show their actions depended on "commonsense considerations" and the reasonable conclusion that criminal activity was probable. *People v. Lee*, 214 Ill. 2d 476, 485 (2005); *People v. Grant*, 2013 IL 112734.

¶ 26    Page argues that Carroll did not have probable cause to search the Pontiac or arrest him because Carroll could not have known whether Page's possession of the magazine was legal— Carroll did not know Page's criminal history. Page further contends that Carroll could not identify a magazine based on the POD camera footage where the object was partially visible only "for a

second." In support of this claim, Page points to the trial judge's admission that she was unsure what they saw protruding from Page's pocket.

¶ 27    Page further argues that the search could not be justified under the automobile exception. The fourth amendment requires specific justification for searches conducted by police officers and other state agents. U.S. Const., amend. IV. The "automobile exception" exception allows law enforcement to perform a warrantless search if the officers have probable cause to believe that the car contains evidence of criminal activity subject to seizure. *People v. James*, 163 Ill. 2d 302, 312 (1994); see also *California v. Acevedo*, 500 U.S. 565, 569 (1991).

¶ 28    The State contends that probable cause to arrest turned on Page possessing the extended magazine, not a firearm or standard magazine, which is unlawful in Cook County. Cook County Code of Ordinances §§ 54-211, 54-212(a) (eff. July 17, 2013). Similarly, Carroll's probable cause to search the Pontiac was based on Page putting the extended magazine into that car. Because extended magazines constitute contraband in Cook County, Officer Carroll could legally search the Pontiac and seize the extended magazine under the automobile exception. See *id*. § 54-212(b).

¶ 29    To form probable cause, Carroll did not need to believe beyond a reasonable doubt that Page was engaging in criminal activity. Instead, his belief that illegal activity was a probability must be reasonable. *Lee*, 214 Ill. 2d at 485; *Grant*, 2013 IL 112734. The State does not defend Page's search and arrest by relying on Page's flight or the plain view doctrine. Instead, the State contends that the POD camera footage alone led Carroll to believe Page possessed a magazine and had placed it in the car. The State maintains that the POD camera footage provides enough for probable cause, pointing to the trial court's observation that Page's hand movements in the POD camera footage looked like someone "racking" a firearm.

¶ 30    We disagree. The POD camera footage, on its own, falls below the minimum for Carroll to have formed probable cause. After watching the footage, the trial court concluded she could not tell what Page put in his pocket. Instead, the trial court concluded Page's conduct in the footage was consistent with someone possessing a firearm. At the same time that possession of a large-capacity magazine is illegal in Cook County (Cook County Code of Ordinances §§ 54-211, 54-212(a) (eff. July 17, 2013)), people can legally carry a firearm. Carroll would have needed to be familiar with Page's criminal history to have suspected his possession of the firearm was illegal. Carroll's testimony and the exhibits lacked the particularized information necessary to support probable cause for the search of the Pontiac. The facts in the record—and considerations of fairness—support that a motion to suppress had a reasonable probability of success, and trial counsel should have pursued it.

¶ 31    We note that our decision does not determine the merits of a potential motion to suppress, only that trial counsel was unreasonable in not pursuing the motion. *People v. Little*, 322 Ill. App. 3d 607, 613-14 (2001). In *Little*, the court rejected the State's argument that a postconviction petition was the preferred avenue for redress, noting that a postconviction petition hearing would determine the reasonableness of counsel's decision in electing not to pursue a pretrial suppression motion to determine whether the arresting officers acted with sufficient probable cause. *Id.* The factual record of the information known and relied on by the arresting officers would be no more developed in a postconviction proceeding than in the trial court. *Id.*

¶ 32    The trial court's concern in a postconviction proceeding instituted on defendant's behalf would involve the same issue: whether defendant's trial attorney was ineffective for not pursuing a motion to quash and suppress evidence. "Any evidentiary hearing on such a postconviction

petition would be aimed at determining the reasonableness of counsel's decision in electing not to pursue a pretrial suppression motion and not, as intimated by the State, conducted for purposes of determining whether the arresting officers acted with sufficient probable cause." *Id.*

¶ 33    The State argues that the trial record contains insufficient evidence regarding Officer Carroll's search and arrest of Page. Specifically, the State contends there is inadequate information in the record about Carroll's probable cause to search the Pontiac or arrest Page, making it impossible for us to determine whether Page was prejudiced by his counsel's decision not to file the motion to suppress. We review the issue *de novo*. See *Bew*, 228 Ill. 2d at 127.

¶ 34    In support of this argument, the State relies on *Gayden*, 2020 IL 123505, and *People v. Burnett*, 2019 IL App (1st) 163018. In *Gayden*, the Illinois Supreme Court held the events leading to defendant's arrest were not at issue, and, thus, the State did not have to establish "justification" for the arrest. *Gayden*, 2020 IL 123505, ¶ 33. This court similarly held in *Burnett*, concluding whether the defendant's fourth amendment claim had merit was unanswerable because the State did not have reason to establish the arresting officer's grounds for forming probable cause during trial. *Burnett*, 2019 IL App (1st) 163018, ¶ 11 (citing *Massaro v. United States*, 538 U.S. 500 (2003)).

¶ 35    The State maintains that Carroll did not provide enough information at trial about *why* he decided to search the car and arrest Page. The State points out that Carroll did not testify to why he was paying particular attention to one POD camera, whether the stop took place in a high crime area (the specific relevance of which we need not address), whether the police had received a tip, or to various other factors relevant to forming probable cause. This argument is illogical and a

"heads I win, tails you lose" scenario for the State. The lack of evidence on the issue of probable cause is precisely what a motion to suppress would have prevented.

¶ 36    We find the record contains enough testimony about what Carroll observed in the POD camera footage to conclude that at least a reasonable likelihood exists for a successful motion to suppress. Notably, the record conclusively states that Carroll did not know Page before the search. So, Carroll had no reason to conclude Page's possession of a firearm was illegal. These facts—concerning the events before Page's arrest—afford sufficient basis for this court to conclude that Page's fourth amendment rights were likely violated, and his counsel should have filed a motion to litigate the issue. See *People v. Bloxton*, 2020 IL App (1st) 181216, ¶ 24 (probable cause determinations focus on facts known to police officer at time of arrest, not facts officer learned afterward); *People v. Moore*, 307 Ill. App. 3d 107, 112 (1999) ("Whether an officer had probable cause to arrest without a warrant is based upon the totality of the circumstances and facts known to the officer at the time of the arrest.").

¶ 37    While the police were parked, the Kia pulled out from behind the Pontiac and drove off. Carroll stated he saw Page throw something that looked like keys into the Kia before running. According to Carroll, no keys were found for the Pontiac. As Page ran, the POD camera swung around to show the foot chase and turned back to parked cars at the moment the Kia was leaving. No evidence or testimony identifies the occupants of the Kia.

¶ 38    The bodycam video shows Carroll leaving his squad, going to the passenger side of the parked Pontiac, and opening the door. Carroll testified he saw about one inch of a firearm protruding from under a jacket on the passenger seat. This portion of the video from Carroll's

bodycam lasts mere seconds. He reaches into the Pontiac on the passenger side and moves a jacket. Suddenly, a gun appears in his hand.

¶ 39 The events relied on by the prosecution occurred quickly. Carroll's trial testimony did not fully explain what is seen on the video, nor did he clarify the steps taken by police leading to Page's arrest. The pertinent moments in the POD video showing Page on the porch take no more than three seconds. Even the trial judge said she did not know what the photographic exhibit from the POD video showed. Page's movements from the porch to the Pontiac occurred about six minutes before the police arrived. After Page threw something in the Kia, the chase lasted a few more minutes. Carroll's narration left gaps in the events unexplained.

¶ 40 The evidence in the bench trial established scant facts to support the State's theory. In addition, defense counsel's opening statement was four sentences; the argument supporting a directed verdict and defense's closing argument argued the State did not establish guilt beyond a reasonable doubt.

¶ 41 Armed Habitual Criminal Statute

¶ 42 Given our conclusion regarding ineffectiveness, we need not decide Page's second argument, challenging the constitutionality of the Illinois armed habitual criminal statute as applied. Generally, courts of review refrain from addressing constitutional questions unless essential to disposition, for example, where the case cannot be determined on other grounds. *People v. White*, 2011 IL 109689, ¶ 144.

¶ 43 Conclusion

¶ 44  Accordingly, we reverse Page's conviction and remand for the trial court to conduct a hearing on the motion to quash the arrest and suppress the evidence. See *Moore*, 307 Ill. App. 3d at 114 (remanding for suppression motion and hearing).

¶ 45  Illinois Supreme Court Rule 615(b)(2) (eff. Jan. 1, 1967) permits a reviewing court to " 'set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken.' " *People v. Hill*, 2021 IL App (1st) 131973-B, ¶ 15 (quoting Ill. S. Ct. R. 615(b)(2) (eff. Jan. 1, 1967)). Under the rule, we may "revest the trial court with jurisdiction to complete [those] proceedings [we] found deficient before resuming consideration of the appeal." *Id.* ¶ 18. The *Hill* court recognized that "when the appellate court finds further trial court hearings are called for in a criminal case the procedure preferred by our supreme court is to remand for those hearings while retaining jurisdiction." *Id.* ¶ 15 (citing *People v. Garrett*, 139 Ill. 2d 189, 194 (1990)). Accordingly, we retain jurisdiction over this case.

¶ 46  Reversed and remanded with directions.

*People v. Page*, 2024 IL App (1st) 220830

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-CR-09521(01); the Hon. Tyria Walton, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and David T. Harris, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, John E. Nowak, and Jessica R. Ball, Assistant State's Attorneys, of counsel), for the People. |