2024 IL App (1st) 240852-U

Fourth Division
Filed July 11, 2024

No. 1-24-0852B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
|     Plaintiff-Appellee, | ) Circuit Court of Cook County |
| | ) |
|     v. | ) No. 24-MC1-10102501 |
| | ) |
| EMANUEL CORBIN, | ) The Honorable William Fahy, |
|     Defendant-Appellant. | ) Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The order denying pretrial release was affirmed where the State met its burden of showing, by clear and convincing evidence, that the defendant's release would pose a threat to the safety of any person or persons or the community and where the strength of the State's proffer was not significantly diminished by the defendant's argument that the evidence against him might be susceptible to suppression.

¶ 2    Defendant, Emanuel Corbin, appeals from an order denying him pretrial release in accordance with section 110-6.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1 (West 2022)). For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4    Corbin was arrested in April 2024 and charged by complaint with being an armed habitual criminal (see 720 ILCS 5/24-1.7 (West 2024)) and violating a Chicago ordinance prohibiting

carrying or possessing high-capacity magazines (see Chicago Mun. Code § 8-20-085(a) (2024)).[1] At his initial appearance after his arrest, the State filed a petition for pretrial detention alleging that Corbin poses a real and present threat to the safety of any person, persons, or the community.

¶ 5    At the hearing, the State proffered the following account of the charged offense:

> "On April 10, 2024, at approximately 4 p.m. at the 1100 block of North Harding Street in Chicago, *** [o]fficers were on routine patrol when they observed this defendant walking westbound on Division approaching Harding. Officers further observed defendant's left jacket pocket to be weighted [*sic*] down by a heavy object and the imprint of an extended firearm magazine shape in his hoodie pocket.
>
> As the defendant became aware of the [officers'] presence[,] this defendant began to scan the area. Believing the defendant to be armed with an illegal firearm[,] officers exit[ed] the vehicle to conduct an investigatory stop of the defendant. As the officers exited the vehicle[,] the defendant immediately began to flee southbound on Harding. After a brief foot pursuit[,] officers were able to detain the defendant in the back of 1115 North Harding Avenue.
>
> Officers conducted a protective pat down of the defendant in the area of the originally observed weighted down object. Officers felt a hard metal L shape[d] object consistent with a firearm. Officers subsequently recovered the firearm out of defendant's left jacket pocket[,] which was a Ruger 380 LCP[,] which was loaded with an extended magazine containing live rounds and one live round in the chamber.

---

[1]    While this appeal was pending, the State filed a superseding indictment under case number 24-CR-0451601 charging Corbin with being an armed habitual criminal, unlawful use or possession of a weapon by a felon (see 720 ILCS 5/24-1.1(a) (West 2024)), and two counts of aggravated unlawful use of a weapon (see *id.* § 24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C)).

> Officers inquired whether defendant had possessed a valid FOID or Conceal[ed] Carry [License,] which the defendant indicated that he did not. Defendant was placed into custody."

¶ 6    The State then proffered Corbin's criminal history. As a juvenile, he was adjudicated delinquent in 1997 for committing armed robbery and, after violating probation, was sentenced to the Department of Juvenile Justice. Between 2002 and 2008, he was convicted six times for possessing a controlled substance or for manufacturing or delivering a controlled substance. In three of those cases, he was sentenced to probation. All three times, he violated the original sentence of probation and, in two of them, was ultimately sentenced to prison. He received prison sentences for the other three drug convictions. During that period, in 2005, he was also convicted of aggravated battery of a police officer. In 2018, he was once again convicted of manufacturing or delivering a controlled substance, and he was sentenced to three years' imprisonment. Most recently, in 2022, he was convicted of aggravated domestic battery, with the aggravating factor being strangulation. He had finished his parole term on February 14, 2024—less than two months before the charged offense. In addition to his felony history, Corbin's record included two convictions for nonviolent misdemeanors and a pair of bond forfeitures.

¶ 7    The State argued that Corbin committed the detainable offense of being an armed habitual criminal based on his prior felony convictions. The State also argued that Corbin posed a real and present threat to the safety of any person, persons, or the community because (1) he was a convicted felon who, despite having recently been released from parole, was carrying a firearm in disregard of the law, (2) he fled from the scene to avoid criminal charges, and (3) he possessed a loaded firearm with an extended magazine. The State also argued that no condition or combination of conditions could mitigate the risk that Corbin poses to the community. It highlighted that Corbin had been found guilty of committing at least three violent felonies, including the conviction for domestic battery for which he had been serving a sentence until less than two months earlier, and it also noted that, in four previous cases, he had been found in violation of probation conditions that had been set by the court.

¶ 8    According to a representative from pretrial services, Corbin scored a 4 for new criminal activity and a 3 for failure to appear on a public safety assessment, leading to a recommendation of release on level two pretrial supervision.

¶ 9    The defense first argued that the State had not shown that the proof was evident and the presumption great that Corbin had committed a detainable offense because the gun was likely the fruit of a fourth amendment violation. Counsel argued that the heavy object seen by the officers could have been any number of things and that Corbin's response to the officers' arrival—looking around the area and then fleeing—did not suggest consciousness of guilt. Because the officers were in an unmarked vehicle and the proffer did not state whether they were in uniform, displayed badges, or said anything about making a stop, counsel argued, Corbin may well have been acting out of concern for his safety, not fear of apprehension. The defense next argued that, because Corbin did not brandish the gun or even try to grab it from his pocket, his release pending trial would not pose a real and present threat to any other person's safety. Counsel further noted that, despite its length, Corbin's criminal record included only three violent offenses and that he had not been flagged for new violent criminal activity. Finally, the defense argued that any threat could be addressed through conditions of release, emphasizing that there were no allegations that Corbin has ever violated electronic or GPS monitoring, and argued that, given the length of time that had passed since Corbin's last probation violation, counsel believed that he could abide by conditions of release. Defense counsel also proffered that Corbin was employed full-time at a hospital, served as a caregiver for his paralyzed uncle, and provided for his children.

¶ 10    After hearing the parties' proffers and arguments, the court entered its findings. First, it found that the State's proffer showed that the proof was evident and the presumption great that Corbin had committed the offense of being an armed habitual criminal. It noted that it had considered the potential fourth amendment issue raised by the defense, but it explained that, "without hearing more," it was "difficult to really make any determination" about it. Second, based on Corbin having only recently completed his parole after his conviction for an aggravated domestic battery that involved strangulation and the fact that he was running from police while

carrying a loaded gun with an extended magazine in the late afternoon, creating a dangerous situation for himself, the officers, and members of the public who might be in the vicinity, the court found that Corbin's release would pose a real and present threat to the safety of others. Third, the court found that no set of release conditions could mitigate that threat. It acknowledged the mitigating facts proffered by the defense, but it explained that Corbin's criminal history provided "ten reasons why this defendant should never be near a firearm let alone a firearm like this" and that electronic monitoring would not prevent Corbin from committing violent crimes or possessing dangerous weapons with extended magazines. Having found that the State had met its burden, the court granted the petition to detain.

¶ 11                                ANALYSIS

¶ 12     On appeal, Corbin challenges the trial court's findings that his release would pose a real and present threat to the safety of any person or persons or the community and that no conditions of release could mitigate that threat. He also argues that the trial court did not properly consider whether the evidence against him would be subject to suppression on fourth amendment grounds.

¶ 13     Under recent amendments to our state's pretrial-release statutes, all defendants are eligible for pretrial release. 725 ILCS 5/110-2(a) (West 2024). Even in circumstances where pretrial release may be denied, there is a presumption in favor of release, which the State has the burden of overcoming by clear and convincing evidence. *Id.* §§ 110-2(c), 110-6.1(a), (e). In cases where the State seeks the denial of pretrial release on the basis of dangerousness, it must prove three propositions by clear and convincing evidence: (1) that the proof is evident and the presumption great that the defendant committed a detainable offense, (2) that the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and (3) that no set of release conditions can mitigate that threat. *Id*. § 110-6.1(e)(1)-(3). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 14    The standard for reviewing the trial court's findings is not yet settled, but most published decisions utilize the manifest-weight standard, the abuse-of-discretion standard, or some combination of those two. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 21 (collecting cases). A finding is against the manifest weight of the evidence only when "the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Castillo*, 2024 IL App (1st) 232315, ¶ 17. A trial court abuses its discretion by making a decision that "is arbitrary, unreasonable, or fanciful" or by adopting a position that "no reasonable person would have taken." *Id.* ¶ 18. Some justices (including the author of this decision) have taken the position that, given the importance of the fundamental liberty interest at stake, orders denying pretrial release should be reviewed *de novo* except to the extent they are based on findings of historical fact. *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 137 (Ellis, J., concurring). For the purpose of this appeal, we do not need to decide which of these approaches to the standard of review is correct. Whether reviewed deferentially or *de novo*, we find no error in the trial court's decision to deny Corbin pretrial release.

¶ 15    We agree with the trial court that the State's proffer showed, by clear and convincing evidence, that Corbin's release would pose a real and present threat to the safety of any person or persons or the community. As to the charged offense, the State's proffer disclosed that Corbin, whose previous felony convictions barred him from possessing a firearm, was caught carrying not just any gun but a loaded semiautomatic handgun that was illegally equipped with an extended magazine. The point of an extended magazine is to allow a shooter to fire more rounds before needing to reload, so it is an easy inference that Corbin was anticipating the need to rapidly fire an unusually high number of bullets, threatening the safety of both the intended target and any bystanders in the vicinity. That threat was not negated by the fact that he chose not to brandish the gun when running from the police. See 725 ILCS 5/10-6.1(g)(7) (West 2024) (enumerating possession or access to a weapon as a factor relevant to determining dangerousness). Corbin's recent conviction for aggravated domestic violence underscores the danger his mere possession of a gun poses to others. See, *e.g.*, *United States v. Rahimi*, No. 22-915, 602 U.S. ____, slip op. at 5-6

(June 21, 2024) (Sotomayor, J., concurring) (describing the especial danger posed by domestic abusers with access to guns).

¶ 16    We also agree with the trial court's determination that no set of release conditions could mitigate the threat Corbin's release would pose. The State's proffer showed that he has a history of violating probation conditions, demonstrating his willingness to disregard any condition the court might set. Between that track record, the practical difficulty of detecting and acting on any violations of release conditions meant to guard against his possession of deadly weapons, and the severe—if not fatal—consequences should the threat he poses come to fruition, we find no error in the trial court's determination that no set of release conditions would be adequate under the circumstances of this case.

¶ 17    Lastly, Corbin argues that, in finding that the proof was evident and the presumption great that he committed the charged offense, the trial court failed to "give[] proper weight" to the possibility that the evidence against him was acquired through violating his fourth amendment rights. Again, we perceive no error. Although the trial court may not entertain suppression motions during detention hearings, "evidence that proof of the charged crime may have been the result of an unlawful search or seizure, or both, *** is relevant in assessing the weight of the evidence against the defendant." 725 ILCS 5/110-6.1(f)(6) (West 2024). Here, according to the State's proffer, the police officers' encounter with Corbin was triggered by their observation of "the imprint of an extended firearm magazine shape in his hoodie pocket," which, if true, would give rise to a reasonable belief that Corbin was violating a city ordinance banning extended magazines. See *People v. Page*, 2024 IL App (1st) 220830, ¶¶ 28, 30 (recognizing that the violation of a county ordinance barring possession of large-capacity magazines can provide probable cause for a search of a car). Neither party proffered any facts to counter that representation, so we agree with the trial court that the theoretical possibility that the officers violated Corbin's fourth amendment rights did not significantly diminish the strength of the State's proffer as to the facts of the offense. We note, however, that our decision is based strictly on the record before us, which was developed within "the narrow purpose and scope of the detention hearing." *People v. Parker*, 2024 IL App (1st)

232164, ¶ 69. Our decision does not preclude Corbin from filing a motion to suppress, and we express no view as to the merits of any motion he may choose to file. *Id.*

¶ 18                                    CONCLUSION

¶ 19    For the foregoing reasons, we affirm the trial court's order denying pretrial release.

¶ 20    Affirmed.